WILLIAM C. PHILLIPS, II AND GRACE M. PHILLIPS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Phillips v. Commissioner
Docket No. 8854-91
United States Tax Court
T.C. Memo 1993-514; 1993 Tax Ct. Memo LEXIS 525; 66 T.C.M. (CCH) 1219; November 9, 1993, Filed *525 Decision will be entered under Rule 155. William C. Phillips, II and Grace M. Phillips, pro sese. Alan R. Peregoy, for respondent. SWIFT
SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined a deficiency in petitioners' 1985 joint Federal income tax and additions to tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Deficiency
6651
6653(a)(1)
6653(a)(2)
6661
$ 143,921
$ 35,996
$ 7,349 *
$ 35,980
*50 percent of the interest due on the portion
of the underpayment attributable to negligence.
All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After settlement, the primary issue remaining for decision is whether amounts credited in 1985 to petitioner William C. Phillips, II's (petitioner's) draw account with Creative Energy Management, Inc. (CEM) constituted additional income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Timonium, Maryland, at the time the petition was filed. During 1984 and until January 25, 1985, petitioner was an employee and *526 an independent commissioned salesman for CEM, a company which sold computers to regulate the operation of heating and air conditioning equipment. Petitioner drew checks on CEM's checking account in favor of himself and in favor of third parties in order to pay a variety of his personal expenses. Checks drawn on CEM's checking account in favor of petitioner or in favor of third parties in order to cover petitioner's personal expenses were accounted for by CEM as increases or as debits to petitioner's draw account with CEM. On January 3, 1985, a check in the amount of $ 15,000 was drawn on CEM's checking account in favor of Shearson Lehman Brothers, Inc. (Shearson), and the $ 15,000 was deposited into a new investment account at Shearson in the name of and for the benefit of petitioners. On January 25, 1985, petitioner's employment relationship with CEM was terminated. On that date, petitioner's draw account with CEM had a total outstanding debit balance of $ 89,046. On or about January 31, 1985, and in connection with the termination of petitioner's employment, $ 40,000 in commissions and $ 7,930 in wages to which petitioner was entitled from CEM but which had not yet been paid *527 to petitioner were credited by CEM to petitioner's draw account with CEM thereby reducing the amount reflected on CEM's books as owed by petitioner to CEM. Between March 28, 1985, and December 17, 1985, 4 checks in the total amount of $ 14,581 were drawn on petitioners' account with Shearson. Petitioners were the payees on the checks. The checks were mailed to petitioners' home address, and the checks were endorsed with signatures that appear to be petitioners'. On November 30, 1985 (the close of CEM's 1985 fiscal year), $ 40,805 in commissions to which petitioner was entitled from CEM but which had not yet been paid to petitioner were credited by CEM to petitioner's draw account with CEM thereby reducing the amount reflected on CEM's books as owed by petitioner to CEM. On March 31, 1988, petitioners' 1985 joint Federal income tax return was untimely filed. On that return, petitioners reported $ 31,298 in commission income and $ 10,000 in wages earned by petitioner from CEM. On audit of petitioners' 1985 joint Federal income tax return, respondent determined, among other things, that petitioner received in 1985 additional commission income from CEM in the amount of $ 49,697 *528 and that, because petitioners owned the Shearson investment account, petitioners received in 1985 additional dividend income in the amount of $ 483 and additional short-term capital loss in the amount of $ 492, which dividend income and short-term capital loss were attributable to transactions entered into on behalf of petitioners' investment account with Shearson. OPINION Commission income earned by an independent salesman is to be included in gross income and is subject to self-employment income tax. Secs. 61(a)(1), 1402(b). Commissions that are credited against a salesman's draw account and used to pay advances made to the salesman through the draw account are included in the salesman's commission income for the year in which they are so credited. See Newmark v. Commissioner, 311 F.2d 913, 915 (2d Cir. 1962), affg. T.C. Memo. 1961-285; Kelly v. Commissioner, T.C. Memo. 1991-324, affd. without published opinion 988 F.2d 1218 (11th Cir. 1993); Lehew v. Commissioner, T.C. Memo. 1987-389. A total of $ 80,805 was reflected in the books *529 and records of CEM as the amount of commissions paid to petitioner in 1985. The commissions were received by petitioner by way of the credits to petitioner's draw account reflecting reductions in the indebtedness petitioner owed to CEM. Petitioner alleges that he was not entitled to commissions of $ 80,805 and that the books and records of CEM were inaccurate. On the evidence before us, we hold that petitioner received in 1985 commission income from CEM in the amount of $ 71,493. [1]
Petitioners make no argument that the commission income is not subject to the tax on self-employment income under section 1401. Petitioners do not dispute that if we conclude that they owned the Shearson account, their dividend income for 1985 would be increased by $ 483 and their short-term capital loss for 1985 would be increased by $ 492. The documentary evidence introduced at trial (particularly the *530 4 checks written to and endorsed by petitioner on this account after his termination by CEM) and the testimony of various witnesses, establish that petitioners owned the Shearson account. We so hold. Petitioners' dividend income and short-term capital loss for 1985 are accordingly increased by $ 483 and by $ 492, respectively. Respondent determined that petitioners are liable for additions to tax under sections 6651, 6653(a)(1) and (2), and 6661. Petitioners have the burden of proof to show that respondent erroneously determined these additions to tax. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners have not offered any evidence nor made any separate arguments regarding these additions to tax. We sustain respondent's determination that petitioners are liable for these additions to tax. We note that petitioners have raised in their brief various tax protester type arguments. We have considered these arguments and have found them to be meritless. See Crain v. Commissioner, 737 F.2d 1417 (5th Cir. 1984); McCoy v. Commissioner, 76 T.C. 1027, 1029-1030 (1981), affd. *531 696 F.2d 1234 (9th Cir. 1983). Decision will be entered under Rule 155. Footnotes
1. This amount takes into account $ 9,312 that respondent concedes was erroneously treated as commissions by CEM and by respondent.↩